## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| GREGORY LOVE STONE on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>Aargon Agency, Inc. *d/b/a* Aargon Collection Agency,<br><br>        Defendant. | Civil Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.    Plaintiff Gregory Love Stone brings this consumer class action arising out of Defendant Aargon Agency, Inc.'s violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C § 1692k.

3.    Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because the named-Plaintiff is located in this Judicial District; Defendant Aargon Agency, Inc. transacts business in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

4.      Plaintiff Gregory Love Stone (hereinafter "Plaintiff") is a natural person, and citizen of the State of Minnesota.  Plaintiff resides in Minneapolis, MN in Hennepin County.

5.      Defendant Aargon Agency, Inc. (hereinafter "Defendant" or "Aargon") is a Nevada corporation with its principal place of business located 8668 Spring Mountain Rd., Las Vegas, Nevada, 89117.  Defendant operates and does business under the name Aargon Collection Agency.  Jolley Urga Woodbury & Little, Ltd. is the registered agent authorized to accept service on behalf of Defendant at 330 South Rampart Blvd., Suite 380, Las Vegas, Nevada, 89145

## FACTUAL ALLEGATIONS – THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFF

**THE ALLEGED CONSUMER DEBT**

6.      Sometime in or around 2011, it is alleged that Plaintiff incurred a debt to Medical University of South Carolina (the "MUSC debt").  The MUSC debt is a debt stemming from an unpaid invoice for personal medical treatment related to Plaintiff's cancer diagnosis.

7.      Sometime prior to July 2016, the MUSC debt was assigned, transferred, or sold to Defendant for the purposes of collection.

8.      The MUSC debt arose from Plaintiff's transactions that were incurred for personal, family or household purposes and, therefore it is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

9.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) because he is allegedly obligated to pay the MUSC debt.

**DEFENDANT IS A DEBT COLLECTOR**

10.     Defendant is engaged in a business, the principal purpose of which is the collection of any obligations and/or alleged obligations of consumers to pay money – specifically, obligations and/or alleged obligations of consumers to pay money arising out of transactions that are primarily for personal, family, or household purposes.   The obligations and/or alleged of obligations of consumers to pay money that Defendant collects are "debts" under 15 U.S.C. § 1692a(5).

11.     According to Defendant's website, Defendant regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.   In addition, Defendant purchases defaulted consumer debts and regularly collects or attempts to collect those debts.

12.     Defendant regularly collects or attempts to collect these debts directly (*or indirectly through debt collection law firms*) by: bringing collection lawsuits against consumers; sending debt collection letters to consumers; making debt collection phone calls to consumers; mailing court pleadings to consumers to collect any debts; mailing court pleadings to the courts and attorneys for debt collection lawsuits; and placing telephone calls to the courts and its attorneys during debt collection lawsuits.   As such, Defendant regularly uses the mail and telephone to collect debts.

13.    State court records indicate that Defendant has brought approximately over one thousand consumer debt collection lawsuits against consumers.

14.    According to Defendant's website, Defendant: is a nationally licensed debt collection agency; a national leader in the debt collection industry; makes outbound debt collection calls; has in-house debt collection attorneys; has highly trained debt collectors; and offers comprehensive debt collection agency services specifically developed for the medical industry.

15.    Defendant's website further states, "This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."

16.    State and Federal court records indicate that Defendant has repeatedly been sued as a debt collector in both state and federal court.  Upon information and belief, Defendant has repeatedly been held liable as a debt collector in state and federal courts.

17.    Defendant has admitted that it is a debt collector in previous FDCPA lawsuits.  *See e.g.*, *Berchard v. Aargon Agency, Inc.*, No. 2:15-cv-01181 (GMN/PAS) [ECF No. 1 at ¶ 7; and ECF No. 2 at ¶ 7] (D. Nev. Jul 2, 2015); *Lipscomb v. Aargon Agency, Inc.*, No. 8:13-cv-02751 (PWR) [ECF No. 37] (D. Md. Nov. 5, 2014).

18.    Defendant holds an active "Collection Agency" license with Financial Institutions Division for the Nevada Department of Business and Industry, license number CAD11347.

19.    Defendant previously held a "Collection Agency" license with the Minnesota Department of Commerce, license number 20490681.  Defendant's Minnesota license expired on June 30, 2008 and is currently inactive.

20.    Defendant previously held "Collection Agency Exemption" license with the Minnesota Department of Commerce, license number 40201625. Defendant's Exemption license is currently inactive.

21.    Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

22.    Defendant was acting as debt collector with respect to the collection of the alleged MUSC debt from Plaintiff as described in paragraphs 6-9.

**DEFENDANT'S ILLEGAL "CONVENIENCE" FEES**

23.    In or around 2016, Defendant began communicating with Plaintiff in an attempt to the collect the alleged MUSC Debt from Plaintiff by placing numerous debt collection calls to Plaintiff and by sending debt collection letters to Plaintiff.

24.    In July 2016, Plaintiff received a debt collection letter from Defendant that was dated June 30, 2016.  *Attached hereto as Exhibit 1 is a true and correct copy of Defendant's letter to Plaintiff, dated June 30, 2016.*

25.    The June 30, 2016 letter stated: (1) that Defendant was a debt collector; (2) that Defendant was attempting to collect a debt; and (3) that the MUSC debt has not been paid nor has any payment arrangement been made.

5

26.    The June 30, 2016 letter demanded payment for the alleged amount owed, which was $7,872.66.

27.    Defendant's calls and debt collection letters are "communications" as defined by 15 U.S.C. § 1692a(2) because they conveyed information to Plaintiff regarding the MUSC debt.

28.    The June 30, 2016 letter stated that "For your convenience we accept all major credit cards, debit cards and check by phone payments using your checking account."

29.    The June 30, 2016 letter further stated that "Certain states require we notify you that a fee of *2% may* be assessed for using a credit card if authorized by law" (emphasis added).

30.    The June 30, 2016 letter has both a barcode and QR code, which is indicative of letter that has been mass-produced and forwarded by mail service provider to consumers across the entire country.

31.    Upon learning about the MUSC debt, Plaintiff attempted to work in good-faith with Defendant to resolve the MUSC debt by exploring reasonable payment options and settlement options.

32.    Defendant was unwilling to offer any reasonable solution to resolve the dispute.  Defendant told Plaintiff that he can pay a lump sum of $5,600 or pay $100 per month until the MUSC debt was paid-in-full.

33.    While the parties were continuing to negotiate, Plaintiff immediately entered into a monthly payment plan with Defendant as a measure of good-faith.

34.    Plaintiff set up a payment plan of $100 per month and payments were automatically deducted from his credit card.

35.    Plaintiff paid Defendant six (6) monthly payments of $100 for the months of July 2016 through December 2016.

36.    For all six (6) payments Plaintiff was charged a $9.95 "convenience" fee.

37.    The $9.95 was an additional fee incidental to Plaintiff's principal obligations and/or Plaintiff's $100 monthly payment.

38.    The "convenience" fee amounted to an additional 9.95% that was assessed for each $100 payment.

39.    Upon information and belief, Defendant failed or refused to inform Plaintiff that a $9.95 "convenience" fee would be applied to every single payment.

40.    For each monthly payment, Defendant only applied $100 to the total balance.  As of the date of this complaint, the alleged amounted owed on the MUSC debt is $7,272.66.

41.    Upon information and belief, the "convenience fee" is an income generating resource for Defendant.

42.    The June 30, 2016 collection letter was objectively false, deceptive and misleading.

43.    Contrary to Defendant's collection letters, Defendant **always** charges a ***flat fee of $9.95*** when consumers, such as Plaintiff make a payment by credit card as opposed to a ***possible two-percent (2%) fee*** as Defendant disclosed in the collection letters.

44.    The "convenience" fee that Defendant charged, and that Plaintiff paid, was nearly five times the amount disclosed in Defendant's collection letter.

45.    The collection of a $9.95 "convenience" fee is not expressly authorized by the agreement creating the MUSC debt and therefore, in violation of 15 U.S.C. § 1692f(1).

46.    Minnesota state law does not affirmatively permit debt collectors to charge consumers a processing fee and/or convenience fee.  Under Minnesota state law, no debt collector shall "attempt to collect any amount of money from a debtor or charge a fee to a creditor that is not authorized by agreement with the client."  *See* Minn. Stat. § 332.37, subd. 19.

47.    Processing fees and/or "convenience" fees such as the ones charged by Defendant in this case violate the FDCPA.  *See Tuttle v. Equifax Check,* 190 F.3d 9 (2d Cir. 1999); *Quinteros vs. MBI Associates*, 999 F.Supp.2d 434 (E.D.N.Y. 2014); *McCutcheon v. Finkelstein, Kern, Steinberg & Cunningham*, 2012 WL 266893 (M.D. Tenn. 2012); *Campbell v. MBI Associates, Inc.* 98 F. Supp. 3d 568 (E.D.N.Y. 2015); *Longo v. Law Offices of Gerald E. Moore & Associates, P.C.*, No. 04-5759 (N.D. Ill. Feb. 3, 2005); *Acosta v. Credit Bureau of Napa County, C.A.,* No. 14-CV-8798 (N.D. Ill. Apr. 29, 2015).

48.     It is Defendant's regular policy and practice to charge a convenience fee to consumers that who pay by credit card, irrespective of whether such fee is authorized by law or contract in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

49.     Defendant is a member of ACA International, the Association of Credit and Collection Professionals (hereinafter "ACA").

50.     ACA is the leading trade association for the credit and collection industry. ACA establishes ethical standards and regularly produces educational and compliance-related information to its members.

51.     Through press releases, blogs, news articles and its own publication – *Collector* magazine, ACA has notified its members on numerous occasions as to the perils of charging consumers convenience fees and/or transaction fees.  *See e.g.*, ACA International, *Cash or Credit? State and federal concerns for charging transaction fees*, Vol. 82 Num. 02, Collector, Sept. 2016, at 46.

52.     According to ACA's website, "A debt collector should err on the side of caution prior to imposing any fees which relate to collection activity to avoid potential violations of the Fair Debt Collection Practices Act (FDCPA) and/or state law." *See Payment Transaction Fees #4006* (June 20, 2017 12:51 p.m.), https://www.acainternational.org/assets/searchpoint/4006paymenttransactionfees.pdf.

53.     Although Defendant is a member of ACA, Defendant chosen to willfully ignore the warnings from the industry leading source for FDCPA compliance.  At all

relevant times, Defendant charged Plaintiff and all class members a convenience fee to pay by credit card, irrespective of whether such fee was authorized by law or contract in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

54.    Defendant's wrongful collection efforts and convenience fees intentionally deceived Plaintiff, intentionally misled Plaintiff, and made material misrepresentations to Plaintiff concerning the alleged debt.    In addition, Defendant used unfair and unconscionable means to collect or attempt to collect the alleged debt.

55.    Specifically, by among other things: (1) collecting an amount of money that Plaintiff does not owe; (2) falsely representing the amount of the alleged debt; (3) falsely representing that compensation may lawfully be received; and (4) collecting an amount of money not allowed by contract or the law.

56.    Defendant's false, misleading, and deceptive representations are material false statements, as they impart in the unsophisticated consumer, a false belief that he was required to pay the convenience fee and that it is legal for Defendant to charge the fee, when such fees are illegal.

57.    Defendant's above-mentioned conduct violated Plaintiff's rights not be a target of unlawful, wrongful and misleading debt collection activity.

**PLAINTIFF'S HARM, DAMAGES, AND INJURIES**

58.    As a result of Defendant's unlawful and wrongful collection efforts, Plaintiff has suffered both tangible and intangible injuries.

59.     Plaintiff has suffered monetary damages and incurred out of pocket costs as result of Defendant's wrongful collection efforts.

60.     Defendant caused Plaintiff to waste time through wasteful correspondence, communications and negotiations to resolve the alleged debt; needless investigation into the alleged debt; and correspondence, communications, investigation, review and analysis with Plaintiff's attorneys.

61.     Plaintiff has incurred costs and expenses consulting with his attorneys as a result of Defendant's unlawful and wrongful collection efforts.

62.     Defendant created confusion as to Plaintiff's financial security, credit history and credit worthiness.

63.     All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

65.     Pursuant to Fed. R. Civ. P. 23(a) and (b), Plaintiff seeks to certify two classes.

66.     The first class that Plaintiff seeks to certify is defined as (hereinafter the "§1692e Class"):

*All consumers who, within one (1) year of the filing of this Complaint, who received a debt collection letter from Defendant disclosing that a "convenience" fee may be charged, who subsequently made at least one payment to Defendant, and were charged a "convenience" fee in the amount higher than what Defendant disclosed in its debt collection letter.*

67.   The §1692e Class shall be subject to the following exclusions, who are not members of the §1692e Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiff and the Class, (2) Counsel for Defendant, (3) all natural persons with an address within the State of New Jersey, and (4) the assigned Judge, Magistrate Judge, and their clerks and staff.

68.   The second class Plaintiffs seek to certify is defined as (hereinafter the "§1692f Class"):

*All consumers who, within one (1) year of the filing of this Complaint, who made at least one payment to Defendant, and were charged a "convenience" fee to make any such payment when no such "convenience" fee was authorized by law or contract.*

69.   The §1692f Class shall be subject to the following exclusions, who are not members of the §1692f Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiff and the Class, (2) Counsel for Defendant, (3) all natural persons with an address within the State of New Jersey, and (4) the assigned Judge, Magistrate Judge, and their clerks and staff.

70.   During the class time-period alleged herein, Defendant did not have a policy and procedure in place to verify that charging an additional convenience fee was authorized by law or contract.

71.    At all relevant times, Defendant charged Plaintiff and all class members a convenience fee to pay by credit card, irrespective of whether such fee was authorized by law or contract in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

72.    This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation.  The §1692e Class and the §1692f Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements under Fed. R. Civ. P. 23(a) and (b) for class certification.

**Rule 23(a)(1) - Numerosity**

73.    According to Defendant's website, Defendant is a large debt collection agency with offices in five states and offers debt collection services across the entire United States.

74.    Defendant sends a standard form debt collection letter to consumers across the entire United States that discloses a possible charge of convenience fee and Defendant subsequently charges such consumers a larger convenience fee than what was originally disclosed.

75.    Defendant charges a flat convenience fee of $9.95 to all consumers who make a payment to Defendant by credit card, whether or not such convenience fee is authorized by contract or law.

13

76.     It is plausible that Defendant charged consumers a larger convenience fee than what was originally disclosed in an original debt collection letter on such a large number of consumers such that joinder of all in this lawsuit would be impracticable.

77.     It is plausible that Defendant charged consumers a convenience fee that was not authorized by contract or law on such a large number of consumers such that joinder of all in this lawsuit would be impracticable.

78.     The exact number of the class members is unknown at this time, but upon information and reasonable belief, the estimated number is in excess of hundreds, if not thousands of class members.

79.     The exact number of class members as well as the identities of all class members are readily ascertainable through appropriate discovery, including but not limited to the business records of Defendant and from the online accounts from Defendant's website.

**Rule 23(a)(2) - Commonality**

80.     All members of the §1692e Class and the §1692f Class had their rights violated in the same manner by the same actions of Defendant.   There are common questions of law and fact that exist as to the §1692e Class and the §1692f Class.

81.     These common legal and factual questions include:

a. Whether Defendant used false, deceptive, and/or misleading means in connection with the collection the class members' alleged debt by: falsely representing the character, amount, and/or legal status of the alleged debt; falsely representing that compensation may be lawfully received by Defendant for the collection of the alleged debt; falsely representing the

amount of the convenience fee; and by threatening to take and/or taking action that cannot legally be taken; and

    b. Whether Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt from the class members by: collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the alleged debt and that was not permitted by law; and by misrepresenting the amount of the convenience fee that may be charged.

82. The common evidence that will drive resolution of the claims for the §1692e Class and the §1692f Class is the following:

    a. A list of consumers who made at least one payment to Defendant and who paid a convenience fee to Defendant;

    b. A list of consumers who have received a debt collection letter from Defendant that disclosed the possible charge of a convenience fee to pay by credit card, who made at least one payment to Defendant, and who paid a convenience fee to Defendant that was larger than the convenience fee disclosed in the debt collection letter;

    c. A list of all instances in which Defendant charges consumers a convenience fee to pay by credit card; and

    d. A total of all "convenience" fee charges that Defendant illegally collected from the aforementioned class of consumers.

83. These common questions of law and fact predominate over questions that may affect individual class members. The answer to these common questions will advance the adjudication or resolution of the litigation as to all Class members.

**Rule 23(a)(3) - Typicality**

84. The claims of Plaintiff are typical of the claims of the all other members of the §1692e Class and the §1692f Class. Plaintiff has the same claims to statutory relief

and has suffered the same injuries as all other members of the §1692e Class and the §1692f Class.

85.    The claims of Plaintiff and the claims of all class members originate from the same conduct, practice, and procedure on the part of Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

86.    Any defenses that Defendant may have to liability or quantum of damages with respect to Plaintiff's claims would be generally applicable to all members of the §1692e Class and the §1692f Class.

**Rule 23(a)(4) - Adequacy**

87.    Plaintiff brings this lawsuit after an extensive investigation of Defendant's alleged misconduct.

88.    Plaintiff brings this lawsuit with the intention to stop Defendant's unlawful practices and to recover statutory penalties for all consumers affected.

89.    Plaintiff will fairly and adequately protect the interests of all members of the §1692e Class and the §1692f Class.  Plaintiff has no interest adverse and/or in conflict to the interests of the members of the §1692e Class and §1692f Class.

90.    Plaintiff's counsel, the Consumer Justice Center, P.A. and Adam R. Strauss, Esq. at Tarshish Cody, PLC, practice exclusively in consumer rights law in this District and other Districts around the country.

91.     Plaintiff's counsel, the Consumer Justice Center, P.A., has been certified as class counsel in dozens of class actions enforcing consumer rights laws in this District and other Districts around the country.

92.     Plaintiff and Plaintiff's counsel will continue to vigorously pursue relief for the §1692e Class and the §1692f Class.  Neither Plaintiff nor his counsel have any interest which might cause them to not vigorously pursue the instant class action lawsuit. Plaintiff and Plaintiff's counsel are committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the §1692e Class and the §1692f Class.

**Rule 23(b)(1) & (2) – Risk of Inconsistent or Dispositive Adjudications**

93.     Certification of a class under Fed. R. Civ. P. 23(b)(1)(A) is appropriate because the prosecution of separate actions for individual class members creates a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant, who collects debt throughout the United States of America.

94.     Certification of a class under Fed. R. Civ. P. 23(b)(1)(B) is appropriate because the prosecution of separate actions by individual class members of the classes would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

95.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the §1692e Class

and the §1692f Class making final declaratory or injunctive relief appropriate for the entire class.

**Rule 23(b)(3) – Predominance/Superiority**

96.     A class action under Fed. R. Civ. P. 23(b)(3) is appropriate because there are numerous questions of law and fact common to Plaintiff, the §1692e Class, and the §1692f Class that substantially predominate over questions that may affect individual class members.

97.     A class action is superior to all other available methods for the fair and efficient adjudication of the controversies raised in this Complaint because individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake.  Thus, members of the §1692e Class and the §1692f Class have little interest in prosecuting or controlling the litigation given the small amounts at stake compared to the cost, risk, delay, and uncertainty of recovery after prosecuting this lawsuit.

98.     The concentration of litigation of these claims in one forum will permit a large number of similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense that individual actions would engender, and therefore, promote judicial economy.

99.     All members of the §1692e Class and §1692f Class had their rights violated in the same manner by the same actions of Defendant.

100.    Statutory relief under the FDCPA follows from evidence that Defendant: (1) sent debt collection letters to consumers that disclosed the possible charge of a convenience fee to pay by credit card and subsequently charged consumers a convenience fee that was larger than the convenience fee disclosed in the collection letter; and (2) charged all consumers a convenience fee that was not authorized by law or contract – not the subjective or individual experience of any class member.

101.    Upon information and belief, few members of the §1692e Class and the §1692f Class are aware that Defendant's action were unlawful.

102.    A similar, but not identical, action is currently pending in United States District Court for the District of New Jersey.  *See e.g., Robert Little, et. al., v. Aargon Agency, Inc., et. al.,* No. 2:17-cv-03754 (WJM/MF) [ECF No. 1] (D.N.J. May 25, 2017) (hereinafter "New Jersey Action").

103.    The proposed New Jersey Action differs from this action because it: (1) alleges only statutory violations of §§ 1692e and 1692 as it relates to unlawful "convenience" fees; (2) does not make any allegations of actual damages; (3) does not make any allegation that any class member actually paid Defendant an unlawful "convenience" fee; (4) seeks only statutory damages in its prayer for relief; and (5) is limited to  New Jersey consumers.

104.    Other than the aforementioned New Jersey Action, Plaintiff and Plaintiff's counsel are not aware of any other pending actions against Defendant related to their

regular practice of charging consumers an unlawful convenience fee to pay by credit card.

105.    The class notice mechanism provides an opportunity for uninformed members of the §1692e Class and the §1692f Class to learn about their rights and obtain relief where they otherwise would not have.

## TRIAL BY JURY

106.    Plaintiff is entitled to and hereby demands a trial by jury. *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### FALSE OR MISLEADING REPRESENTATIONS

107.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

108.    Defendant used false, deceptive and/or misleading means in connection with the collection of the alleged debt by:

    a.  Falsely representing the character, amount and/or legal status of the alleged debt;

    b.  Falsely representing that compensation may be lawfully received by Defendant for the collection of the alleged debt;

    c.  Falsely representing the amount of the convenience fee;

    d.  Threatening to take and/or taking action that cannot legally be taken;

109.    Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

110.   As a result of Defendant's violations of the FDCPA, Plaintiff and the members of the §1692e Class and the §1692f Class are entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## UNFAIR AND UNCONSIONABLE MEANS

111.   Plaintiff restates and re-alleges the preceding allegations of this complaint.

112.   Based on the aforementioned conduct, Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff.

113.   Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff by:

    a. Collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the alleged debt and that was not permitted by law; and

    b. Charging a convenience fee in an amount above and beyond the amount previously disclosed in writing.

114.   Defendant's conduct violated 15 U.S.C. §§ 1692f and 1692f(1).

115.   As a result of Defendant's violations of the FDCPA, Plaintiff and the members of the §1692e Class and the §1692f Class are entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT III
## CONVERSION

116.    Plaintiff restates and re-alleges the preceding allegations of this complaint.

117.    At all relevant times, Defendant never had the present right to use, take possession of, or move Plaintiff's property – in this case, his money.

118.    Defendant intentionally deprived, and interfered with, Plaintiff of the use, possession, and enjoyment of his property, without a claim of right, by unlawfully charging and retaining $9.95 for each monthly payment.

119.    Defendant converted Plaintiff's money for its own use and benefit by unlawfully charging and retaining $9.95 for each monthly payment.

120.    As a direct and proximate result of Defendant's conversion, Plaintiff has been deprived of the use, possession, and enjoyment of his money and damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Gregory Love Stone demands a trial by jury and prays for judgment against Defendant Aargon Agency, Inc. *d/b/a* Arrgon Collection Agency follows:

1.  Awarding judgment against Defendant in an amount to be determined at trial;

2.  Certifying both the §1692e Class and the §1692f Class as described herein;

3.  Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant;

4.  Awarding the §1692e Class members and the §1692f Class members actual damages (reimbursing them for the charging of illegal fees), statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant;

22

5.  Awarding Plaintiff damages against Defendant caused by Defendant's conversion of his property;

6.  Awarding Plaintiff, the §1692e Class members, and the §1692f Class members any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

7.  Awarding Plaintiff, the §1692e Class members, and the §1692f Class members such other and further relief as the Court deems proper, just and equitable.

Dated:  June 27, 2017                    **TARSHISH CODY, PLC**

                                 By:    s/ Adam R. Strauss
                                        Adam R. Strauss (#0390942)
                                        ars@attorneysinmn.com
                                        Scott M. Cody (#0392137)
                                        scody@attorneysinmn.com
                                        6337 Penn Avenue South
                                        Minneapolis, Minnesota 55423
                                        Telephone: (952) 361-5556
                                        Facsimile: (952) 361-5559

Dated:  June 27, 2017                    **CONSUMER JUSTICE CENTER, P.A.**

                                 By:    s/ Thomas J. Lyons, Jr.
                                        Thomas J. Lyons, Jr. (#0249646)
                                        tommy@consumerjusticecenter.com
                                        367 Commerce Court
                                        Vadnais Heights, Minnesota 55127
                                        Telephone: (651) 770-9707
                                        Facsimile: (651) 704-0907

                                        **ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Gregory Love Stone, verifies, certifies, and declares under penalty of perjury, as follows:

1.  I am a Plaintiff in this civil proceeding.
2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.  Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
6.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON**  ___June___  ___26th___, ___2017___
                     **Month**       **Day**      **Year**

_Gregory Love Stone_
**Gregory Love Stone**

24